IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIVYA VARGHESE<br>AND JOHN VARGHESE, W/H,<br>    Plaintiffs, | :<br>:<br>:<br>: | |
| v. | : | CIVIL ACTION |
| | : | |
| THE TJX COMPANIES, INC., d/b/a<br>T.J. MAXX,<br>    Defendant / Third-Party<br>    Plaintiff, | :<br>:<br>:<br>:<br>: | <br><br><br>NO. 17-3866 |
| v. | :<br>: | |
| KELLERMEYER BERGENSONS<br>SERVICES, LLC, *et al.*,<br>    Third-Party Defendants. | :<br>:<br>: | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                               March 8, 2019
UNITED STATES MAGISTRATE JUDGE

**I.    INTRODUCTION**

This matter arises out of a claim for personal injuries brought by Divya Varghese, who slipped and fell while trying on shoes in a department store operated by Defendant The TJX Companies, Inc. ("T.J. Maxx"). Ms. Varghese seeks the recovery of damages for her injuries. Her husband has filed a derivative claim for loss of consortium. T.J. Maxx has brought third-party claims against Kellermeyer Bergensons Services, LLC ("KBS"), who provided the store's janitorial services, and Carteret Cleaning (and its owner Cornel Babici, collectively "Carteret"), who subcontracted with KBS to provide floor-waxing services. KBS, in turn, brings a crossclaim against co-defendant Carteret to honor an indemnification agreement that it contends applies to the underlying claim.

There are five separate motions for summary judgment currently before the Court. T.J. Maxx moves for summary judgment as to the direct claims brought by Plaintiffs. (Doc. No. 58.) KBS and Carteret each move for summary judgment as to the third-party claims brought against them by T.J. Maxx.[1] (Doc. Nos. 65, 73.) Finally, KBS and Carteret have filed reciprocal motions for summary judgment in regard to KBS's cross-claim against Carteret for indemnification under the terms of their contract. (Doc. Nos. 64, 73.) On December 18, 2018, the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. No. 72.) For the reasons set out within, we resolve these motions by granting summary judgment in favor of Defendant T.J. Maxx as against Plaintiff. As this ruling renders unnecessary any ruling on the remaining motions (Doc. Nos. 64, 65, and 73), we deny them all as moot.

## II. BACKGROUND[2]

### A. Factual Background

Plaintiff was shopping with her sister in the shoe department at the T.J. Maxx store in Feasterville-Trevose, Pennsylvania on April 30, 2016. After browsing for "about fifteen minutes," she found an appealing pair of "two to three-inch" high-heeled shoes and sat down on a bench to try them on. (Doc 80-1 at 62:1-64:1, "Pl. Dep."). She then stood up from the bench, took "about

---

[1] T.J. Maxx filed a third-party joinder complaint on September 20, 2017 against KBS and Carteret for indemnification and contribution. (Doc. No. 5.) While KBS and Carteret style their motions for summary judgment as against Plaintiff on the basis that that Plaintiff failed to present evidence regarding a hazardous condition (Doc. 65 at 12-15; Doc. 73-1 at 4-6), we note that Plaintiff has not made any direct claims against them. (*See* Doc. 1 at 18-23, "Compl."). We therefore construe KBS and Carteret's motions as against T.J. Maxx in that they seek dismissal of the third-party claims filed by Defendant/Third-Party Plaintiff T.J. Maxx.

[2] The facts below are drawn from the record before the Court, which we construe in the light most favorable to the nonmoving party, as we must at the summary judgment stage. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

two steps," slipped, and fell to the floor. (Pl. Dep. at 54:1-24.) She testified that she "passed out" as she hit the floor and "woke up" when emergency medical personnel arrived. (Pl. Dep. 82:14-18.) Although her sister was nearby at the time, she did not witness the fall. (Pl. Dep. 64:6-20.) No other eyewitnesses have been identified.

At her deposition, Plaintiff noted that during the fifteen minutes before she fell—when she was wearing "flats"—she did not notice any liquid, wax, or other substance on the floor. (Pl. Dep. at 71-72, 81, 97, 175-181.) She testified that there was "not a specific spot" that was particularly slippery due to any foreign substance; rather, it was the floor itself: "It's a slippery floor[,]" she stated, "I still think it's a slippery floor." (Pl. Dep. 77: 8-11, 78:11-79:3). After the fall, she experienced medical difficulties, including arm, hip, and back pain, which eventually required surgery. (Pl. Dep. at 104-105.)

**B.     Procedural Background**

On July 26, 2017, Plaintiff filed a complaint against Defendant T.J. Maxx in the Philadelphia Court of Common Pleas, alleging negligence. (Compl.) On August 28, 2017, Defendant removed the case to this Court on the basis of diversity jurisdiction. (Doc. No. 1 at 1-15.) T.J. Maxx filed its Answer to the Complaint on September 5, 2017 and then filed a third-party joinder complaint on September 20, 2017 against KBS and Carteret for indemnification and contribution. (Doc. Nos. 3, 5.) KBS in turn filed a crossclaim against Carteret also for indemnification and contribution. (Doc. No. 20.) T.J. Maxx and KBS each moved for summary judgment (Doc. Nos. 37, 39), which the District Court denied without prejudice in light of the parties' scheduled arbitration trial, which was held on August 22, 2018. (Doc. No. 56.) Following upon the arbitration, T.J. Maxx, KBS, and Carteret each filed the motions for summary judgment now before us. (Doc. Nos. 58, 64, 65, 73.) On January 24, 2019, Plaintiff filed its response in

3

opposition to Defendant T.J. Maxx's motion, (Doc. No. 80), and KBS and Carteret filed reciprocal responses to each other's motions for summary judgment. (Doc. Nos. 78, 79.) On January 28, 2019, T.J. Maxx filed a reply. (Doc. No. 81.) The motions are now ripe for judicial consideration.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable juror could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

The moving party bears the initial burden of "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to successfully oppose a properly supported motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In reviewing the summary judgment record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994). The court may not make credibility determinations or weigh the evidence in reaching its conclusion. *See Anderson*, 477 U.S. at 255 (observing that these are jury functions).

4

## IV. DISCUSSION

Plaintiff asserts a negligence claim based on premises liability. As a federal court exercising diversity jurisdiction in this case, we apply the substantive law of Pennsylvania to this dispute. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).

We start with the proposition that in a case sounding in negligence, a plaintiff must demonstrate that: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27-28 (Pa. 2006) (citation omitted). The question of what duty of care a possessor of land owes to one who enters upon his land "depends upon whether [the latter] is a trespasser, licensee, or invitee." *Carrender v. Citterer*, 469 A.2d 120, 123 (Pa. 1983) (citation omitted); *see also Guttridge v. AP Green Serv., Inc.*, 804 A.2d 643, 655 (Pa. Super. Ct. 2002). The parties agree here that Plaintiff was an invitee. (*See* Doc. No. 58-2 at 6 ("Def. Br."); Doc. No. 80 at 6 ("Pl. Br.")). Accordingly, she is entitled to T.J. Maxx's highest degree of care.

The general rule is that a business owner owes its invitee a duty to maintain the premises in a reasonably safe condition. *See David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984); *see also Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 745 (Pa. 1984) (explaining that duty). More specifically the business owner is subject to liability for harm caused to its invitee by a condition on the land if it:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

5

"A plaintiff's ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall." *Daniels v. Sears and Sears Roebucks & Co.*, No. 15-4821, 2016 WL 521205, at *3 (E.D. Pa. Feb. 10, 2016) (citing Restatement (Second) of Torts § 343); *see also Canton v. Kmart Corp.*, 470 Fed. App'x 79, 83 (3d Cir. 2012). Further, Pennsylvania courts require plaintiffs to prove that the defendant knew or should have known of the condition. *See, e.g.*, *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994). Defendants argue that summary judgment is appropriate here given that there is no evidence, save the conclusory, unsupported statement of Plaintiff, to prove the existence of a dangerous or hazardous condition that caused her to fall, and further given that there is no evidence that T.J. Maxx knew or should have known of any such condition. (Def. Br. at 9-11.) In response, Plaintiff does not argue that any foreign substance caused her fall; rather, she argues that the floor itself—made of tile—is the dangerous and hazardous condition, and that T.J. Maxx should have installed carpeting. (Pl. Br. at 7-8.) Plaintiff submits an expert report in support of her claim that a carpeted floor would have been safer.[3] (Doc. 80-2, Ex. B) ("Green Report.").

---

[3] On October 3, 2018, Plaintiff obtained an expert report opining on the safety of Defendant's T.J. Maxx's flooring. The report, authored by liability expert Walter Green, was based on an inspection performed by Mr. Green on October 2, 2018. T.J. Maxx objects to this report on two grounds: that it was untimely and "based on an unauthorized inspection that did not comply with Fed. R. Civ. P. 34." (Doc. No. 81 at 1.) As to timeliness, Defendant is correct to note that the report was produced well after the August 22, 2018 arbitration trial and the close of discovery. It is further undisputed that Plaintiff failed to make a written request to obtain permission before inspecting T.J. Maxx's property. Federal Rule of Civil Procedure 34(a) governs in this situation, and provides that "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated land or other proposed possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Rule 34 applies here notwithstanding the fact that Defendant's premises was open to the general public. *See, e.g., McConnell v. Canadian Pacific Realty Co.*, No. 11-cv-972, 280 F.R.D. 188 (M.D. Pa. Nov. 14, 2011) (inspection of retail mall which was open to the public still subject to Rule 34 request). By its own terms, the rule provides that the touchstone analysis is one of reasonableness. Here, although we are not obligated to consider the report in that it was submitted untimely and without

At her deposition, Plaintiff testified that she had not noticed anything slippery on the floor during the fifteen minutes she had been in the shoe department before she fell:

> Q: Was there anything -- did you feel anything slippery at all at any point while you were in the store for the 15 minutes leading up to the time where you sat on the bench?
> A: Not before I fell.
> Q: While you were sitting there trying the shoes on, did you feel anything slippery at all on the floor?
> A: No ….

(Pl. Dep. 62:8-17). She further did not recall having any liquid or other foreign substance on her clothes or skin after falling. (Pl. Dep. 178:2-4.) Nonetheless, she testified that the floor was "shiny" and "slippery," (Pl. Dep. 71:2-13, 81:1-4, 97:1-4), but not in any "specific spot:"

> Q: When you went back for this inspection with your husband, was there anything slippery about that on any part of the floor?
> A: It's a slippery floor. I still think it's a slippery floor
> . . .
> Q: What spot did you find it slippery at when you went back two weeks ago?
> A: It's not a specific spot. I just think that that's not the correct floor for a shoe aisle, especially after my fall.
> Q: You think there should be a different kind of flooring in the shoe aisle?
> A: It's because after I fell I'm very cautious, and I think having carpet in a shoe area is a better caution for you customers . . . .

(Pl. Dep. 77:8-11, 78:11-79:3). Her expert report, similarly, reaches the following conclusions:

> 1. It [would be] reasonable and appropriate for TJ Maxx to provide a carpeted area in the shoe department where customers are trying on new shoes that they may not be accustomed to wearing; 2. It [would be] reasonable and appropriate for TJ Maxx to provide a carpeted area in the shoe department where the synthetic and/or leather soles of new shoes have not been subject to wear and are therefore more likely to slip on a hard, smooth walking surface than on a carpeted surface. 3. It was foreseeable that a carpeted walkway surface was less likely to cause a slip and fall than a smooth, hard walking surface such as terrazzo, tile, marble or concrete.

---

regard to Rule 34, we presume that T.J. Maxx was not burdened by the inspection and have considered the report. Ultimately, it does not affect our resolution of the case.

(Green Report at 4.) The expert report does not change our analysis. The question is *not* whether alternative covering of the floor with a rug would be "reasonable and appropriate" but rather whether Plaintiff has brought forth evidence to establish the presence of a hazardous condition. The weight of authority in Pennsylvania makes clear that summary judgment is warranted where there is no evidence of a dangerous of hazardous condition beyond Plaintiff's affirmations that the floor was "shiny" or "slippery." In *Yeiter v. Kmart Corp. Bergensons Prop. Servs, Inc.*, No. 12190 EDA 2013, 2014 WL 10896970, at *4 (Pa. Super Ct. July 1, 2014), the plaintiff "testified that she did not observe any foreign object on the floor which caused her fall and only made a mere allegation that the floor was slippery . . . attribut[ing] her fall to the floor itself." *Id.* (quoting *Yeiter v. Kmart Corp.*, *et al.*, No. 0810168, 2013 WL 9670702 (Pa. Cmwlth. Apr. 1, 2013). Affirming summary judgment, the Superior Court concluded that plaintiff failed to make out a *prima facie* case for negligence where the record was "devoid of any reason or explanation for why [she] slipped and fell." *See id.* at 2-3. Similarly, in *Daniels*, No. 15-4821, 2016 WL 521205, at *3, the plaintiff slipped on an "unusually shiny" Sears floor but did not know what caused her fall. Applying Pennsylvania law, the court granted summary judgment, explaining that "evidence of a shiny floor alone does not constitute evidence from which a fact-finder could reasonably infer the existence of hazardous condition." *Id.* at *4.

Plaintiff cites *Zito v. Merit Outlet Stores*, 647 A.2d 573, 573-74 (Pa. Super. 1994) to support her claim. In *Zito*, the plaintiff was "navigat[ing] between boxes" in a narrow shopping aisle and injured herself when she unwittingly stepped onto a descending ramp. Reversing the trial court's order granting a non-suit, the Superior Court noted that the ramp was twice as steep as recommended under national safety standards and that the aisles were "overcrowded requiring [the plaintiff] to carry her basket in front of her so that her view was obstructed." *Id.* at 219. The

8

court concluded that "a jury, given the opportunity, could have inferred that Appellees failed in their duty of care." *Id.*

Here, however, even viewing the evidence in a light most favorable to Plaintiff, we are convinced that no reasonable juror would find the existence of a dangerous or hazardous condition. Indeed, Plaintiff concedes that there was no liquid or foreign substance that caused her fall. And beyond her affirmations that the floor was "shiny" and "slippery," unlike in *Zito*, there are no facts from which a fact-finder could adduce the existence of a dangerous condition. The fact-finder would be left to speculate as to what caused her fall, but "[a] jury is not permitted, however, to speculate or guess; conjecture, guess or suspicion do not amount to proof." *Lanni v. Pa. R.R. Co.*, 371 Pa. 106, 88 A.2d 887, 889 (Pa. 1952); s*ee also Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."). The absence of evidence in support of Plaintiff's claim thus demonstrates "that there are no facts supporting the nonmoving party's legal position" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

Further, there is no evidence from which a jury could reasonably find that the floor *itself* is a dangerous and hazardous condition. While Plaintiff contends that tiled flooring is an "anomaly within the retail industry" (Pl. Br. at 3), she identifies no industry standard—akin to the national safety standard in *Zito*—to establish that T.J. Maxx's flooring constituted a deviation from accepted practice.[4] The upshot is Plaintiff's assertion that carpeting would have been safer. That may well be the case, but that circumstance alone does not establish that T.J. Maxx's failure to

---

[4] We acknowledge that Plaintiff has identified retailers that *do* use carpeting in their shoe departments. *See* Green Report at 5-6. This evidence, however, is insufficient to establish that T.J. Maxx's failure to do so was in any way a breach of a standard of care.

9

install carpeting breached any standard of care. Finally, Plaintiff does not submit foundational facts, statistical support, or other evidence tending to show a factual issue regarding T.J. Maxx's knowledge of any alleged dangerous condition that may have existed. No reasonable juror could therefore conclude that T.J. Maxx knew or should have known of the existence of any dangerous condition. On that basis, too, we must grant summary judgment in favor of Defendant.

While there is no dispute here that an accident occurred, and that Plaintiff unfortunately suffered resulting injuries, the law is clear that "the mere happening of an accident does not establish negligence nor raise an inference or presumption of negligence," *Laubach v. Haigh*, 433 Pa. 487, 489 (1969). A business owner is not "an insurer of the visitor's safety." *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 939 (Pa. Super. Ct. 2002). We are left with no alternative other than to grant the T.J. Maxx motion. As there are no underlying claims to which T.J. Maxx is liable, the KBS and Carteret motions as to T.J. Maxx's third-party claims are denied as moot. For the same reason, we deny as moot KBS and Carteret's reciprocal motions for summary judgment with regard to indemnification.[5]

## V. CONCLUSION

Plaintiff has failed to establish the essential elements of a premises liability claim: that (i) there existed a hazardous condition (ii) that Defendant knew or should have known about. Accordingly, summary judgment is granted in favor of Defendant T.J. Maxx. The grant of

---

[5] In section 13.A of their agreement, KBS and Carteret agreed that Carteret would indemnify KBS "against all losses, damages, [and] claims . . . (including reasonable attorneys' fees and expert fees) actually or allegedly arising out of or resulting from, in whole or in part: (i) bodily injury [ ] of any person . . . resulting from the acts or omissions of [Carteret] or its employees, agents, or subcontractors." (Doc. 64, Ex. A). To that end, KBS seeks reimbursements for attorneys' fees, costs, and expenses associated with this litigation. (Doc. 64 at 12.) Carteret responds that "there is utterly no evidence that Plaintiff's fall 'arose' out of anything Carteret did." (Doc. 78 at 2.) As we have determined that no party faces legal liability for Plaintiff's fall, this claim is rendered moot.

summary judgment then renders moot the necessity of resolving the remaining claims. An appropriate order follows.

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE